UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Crane Engineering, Inc., | Court File No. 16-cv-00007 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| GMI Engineered Products, LLC and Andrew Bowman, | **JURY TRIAL DEMAND** |
| Defendants. | |

---

Plaintiff Crane Engineering, Inc. ("Crane Engineering"), for its Complaint against GMI Engineered Products, LLC ("GMI"), and Andrew Bowman (collectively, "Defendants"), states and alleges as follows:

## PARTIES AND JURISDICTION

1. Crane Engineering is a Minnesota corporation with its principal place of business at 2355 Polaris Lane North, Plymouth, MN 55447. Crane provides forensic and consulting services encompassing fire and explosion investigation, accident reconstruction and vehicle testing, consulting engineering and laboratory services, building science services, and computer and data forensics. Part of Crane Engineering's business is evaluating and testing products for performance, safety, and quality.

2. Defendant GMI Engineered Products, LLC ("GMI") is an Ohio limited liability company with its principal place of business at 3600 Township Road 27, Bluffton, OH 45817 and all members residing in Ohio. GMI develops and manufactures polishing tools for use in the concrete placement and concrete finishing industries,

including the "CRMX 3 Step Concrete Polishing System" ("CRMX Products"). According to its website, GMI sells its CRMX Products to customers in Minnesota. GMI has also provided training services for contractors in Minnesota. As described more fully below, GMI and its member Andrew Bowman solicited Crane Engineering, located in Minnesota, to provide product testing services of the CRMX Products.

3. Defendant Andrew Bowman, an individual, is a member of GMI. Upon information and belief, Mr. Bowman is a resident of Ohio.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, namely, the Lanham Act (15 U.S.C. § 1051, *et seq.*).

5. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) in that the state law claims are factually interdependent with the federal law claims and form part of the same case or controversy under Article III of the U.S. Constitution.

6. In addition, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) and (c) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

7. Venue is proper in the United States District Court, District of Minnesota, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claims occurred in this district, Defendants directed their business activities to this district, and Plaintiff has suffered the effects of Defendants' conduct in this district.

## BACKGROUND FACTS

8.  This is an action for trademark infringement, deceptive advertising, fraud, defamation, and misappropriation under federal and state law, based on Defendants' blatant forgery of a product testing report attributed to Crane Engineering and its employee Gregory Bauer, PE, including the unauthorized use of the Crane Engineering trademark.

9.  Crane Engineering is the owner of all trademark rights at issue in this action, including, but not limited to, common law rights to the mark "Crane Engineering," and its logo, a certain pyramid design and CRANE ENGINEERING used with that pyramid as a design mark, which are illustrated below (collectively, the "Crane Mark"):



10. Defendants created and are distributing a false report that features the Crane Engineering Mark and the forged signature of a Crane Engineering employee to market, promote and drive sales of the CRMX Products.

11. Crane Engineering seeks injunctive relief and monetary damages from this Court to redress Defendants' infringing use of the Crane Mark and continued use and publication of the forged report.

## DEFENDANTS APPROACHED CRANE ENGINEERING TO INQUIRE ABOUT PERFORMANCE TESTING FOR THE CRMX PRODUCTS

12. Gregory J. Bauer, P.E, was employed by Crane Engineering as a full-time Forensic Civil / Geotechnical Engineer from approximately July 2013 to June 2014. Mr. Bauer met Mr. Bowman in approximately 2011 in Faribault, Minnesota where Mr. Bowman was working on a construction project. Mr. Bauer and Mr. Bowman spoke and exchanged emails several times in 2011 and 2012.

13. In February 2014, Mr. Bowman contacted Mr. Bauer for the purpose of engaging in business with Crane Engineering. Mr. Bowman requested a proposal from Crane Engineering to perform testing on several commercial products for polishing concrete and a portable tool that measured the surface roughness of concrete, the "T Meter."

14. Mr. Bowman spoke with Mr. Bauer and another Crane Engineering employee, Chris Brand, P.E. Mr. Bowman informed Mr. Bauer and Mr. Brand that the purpose of such testing was to establish the extent to which the products could produce a certain concrete finish in compliance with industry specifications, specifically CSDA-ST-115 and ASME B46.1. Mr. Bowman also stated that he wanted Crane Engineering to compare and correlate the measurement results of the T Meter with more traditional results from a laboratory.

15. On February 7, 2014, Crane Engineering provided Mr. Bowman with a proposed scope of work for the testing. A copy of the email containing the proposal is

4

attached to the Complaint as Exhibit 1. Crane Engineering subsequently provided Mr. Bowman with an estimated budget of $14,000 for the project.

16. Neither Mr. Bowman nor any other representative from GMI ever hired Crane Engineering or paid it to perform the testing. As a result, Crane Engineering never performed the proposed testing and analysis, nor did Mr. Bauer, Mr. Brand, or any other Crane Engineering employee author any report for Defendants.

**DEFENDANTS FORGED A REPORT BY CRANE ENGINEERING
AND GREGORY BAUER REGARDING THE CRMX PRODUCTS**

17. In April 2015, a professional in the construction industry approached Crane Engineering to verify the information contained in a report of testing conducted on the CRMX Products that appeared to have been prepared by Crane Engineering. Mr. Bowman had provided that individual with the report in question on behalf of GMI and told him that Crane Engineering had tested the CRMX Products. Mr. Bowman wanted that individual to distribute the report to people and businesses in the construction industry.

18. The individual provided Crane Engineering with a copy of the report he received from Mr. Bowman.

19. The report is entitled "Report of Ra (Roughness average)" and is dated March 26, 2014 (the "Forged Report" or "Report"). It was purportedly prepared by Mr. Bauer, P.E., and it contains a signature of his name as well as the Crane Engineering Mark. A copy of the Forged Report is attached to the Complaint as Exhibit 2.

20. The Introduction of the Forged Report states:

> This report present the results of laboratory work performed by our firm on 24 testing blocks obtained by Andy Bowman of GMI Engineered Products on March 12th, 2014. The scope of our work is to evaluate the maximum refinement capacity of each of the 3 tools that are commercially traded and part of the CRMX Concrete Polishing System. The purpose of the testing project is to provide GMI Engineered Products with a reliable numerical index of the maximum refinement value of each of the 3 tools in their proprietary/commercially traded, proprietary polishing system so that a proper value of surface damage can be recorded when the tools are being used on various concrete/masonry substrates. GMI Engineered Products agrees that the testing parameters implemented for this project will be identical to other surface assessment projects performed by Crane Engineering for metallurgy clients.

(Ex. 2 at 1.)

21. This document is a forgery. It was not authored by Mr. Bauer or any other individual employed by Crane Engineering, and it was fraudulently compiled by pasting the Crane Engineering Mark on the first page, adding information from the proposed scope of work Crane Engineering provided to Mr. Bowman, and forging Mr. Bauer's signature on the last page. The information contained in the Forged Report is not based on any testing or analysis completed by Crane Engineering, Mr. Bauer or Mr. Brand.

22. Crane Engineering promptly informed the individual that the Forged Report was not Crane Engineering's work product and that Crane Engineering could not verify its contents.

23. The metadata in the Forged Report identifies the author as "Bowman," and indicates that it was created April 8, 2015.

24. On May 1, 2015, counsel for Crane Engineering sent a letter to Mr. Bowman and GMI's president, Gail Bowman, setting forth the foregoing facts and demanding that GMI and its agents immediately cease and desist from further using the

Forged Report or its contents for any purposes and from further publishing it (and any information contained within it) to any other individuals or entities. A copy of Crane Engineering's May 1, 2015 letter is attached to the Complaint as Exhibit 3.

25. An attorney for GMI responded by letter dated May 8, 2015. GMI acknowledged that the Report was not authored by Crane Engineering or Mr. Bauer on behalf of GMI. GMI represented that all copies of the Forged Report in its possession were destroyed, that Defendants did not intend to publish the Report, and that they would not reference the Report or its contents in any promotional materials. GMI claimed that the only individuals who were aware of the Report were GMI, Andrew Bowman, Gail Bowman, and the individual who brought the report to Crane Engineering's attention. A copy of GMI's May 8, 2015 letter is attached to the Complaint as Exhibit 4.

26. Counsel for Crane Engineering replied to GMI's letter on May 8, 2015 to confirm that GMI would not further publish the Forged Report or reference it for any purpose and that GMI had destroyed all copies of the Report in its possession. Crane advised GMI that if it discovers the Forged Report is further published or used by GMI or Mr. Bowman in the future, Crane would seek injunctive relief and money damages. A copy of Crane Engineering's May 8, 2015 letter is attached to the Complaint as Exhibit 5.

27. GMI's counsel replied on May 11, 2015 to acknowledge that all copies of the Forged Report were destroyed and that GMI, its owners, employees and agents would not further publish the Report. As a result, Crane Engineering took no further action at that time, but reserved its rights to do so if it discovered that GMI or Mr. Bowman

continued to publish or otherwise use the Forged Report. A copy of GMI's May 11, 2015 letter is attached to the Complaint as Exhibit 6.

### DEFENDANTS CONTINUE TO PUBLISH AND USE THE FORGED REPORT TO PROMOTE CRMX PRODUCTS

28. Despite their counsel's representations to Crane Engineering, Defendants continued to distribute the Forged Report to market and promote their business after May 2015.

29. On October 26, 2015, Crane Engineering received a call from a construction industry professional in the flooring business, Bruce Nicholson, who inquired about the Forged Report. Mr. Nicholson was a member of a technical expert group ("TE Group") created by Mr. Bowman to promote GMI products in the construction industry, specifically the CRMX Products. Mr. Bowman provided Mr. Nicholson and the other members of the TE Group with a copy of the Forged Report and told them to use it to market and promote CRMX Products in the industry.

30. The Forged Report was contained in an electronic folder that Mr. Bowman shared with the TE Group. At Mr. Bowman's direction, Mr. Nicholson shared links to the Forged Report with contractors when bidding on jobs and with other industry contacts throughout the summer and into the fall of 2015. The other members of the TE Group shared the Forged Report as well with Mr. Bowman's knowledge and direction.

31. Mr. Nicholson had recently proposed using CRMX Products for a federal project and submitted the Forged Report when bidding on the related federal contract.

The contractor for that project asked Mr. Nicholson for more information about the Report, which prompted Mr. Nicholson to contact Crane Engineering.

32. Crane Engineering promptly informed Mr. Nicholson that the Forged Report was not Crane Engineering's work product and that Crane Engineering could not verify its contents.

33. The Forged Report gives the appearance that CRMX Products have been certified to meet the CSDA ST-115 standard. Certification that the CRMX Products meet the ST-115 standard indicates that they outperform other concrete polishing products and gives the CRMX Products a competitive advantage.

34. The Concrete Sawing and Drilling Association (CSDA) published the ST-115 standard. Upon information and belief, Mr. Bowman is the chair of the CSDA commission on polished concrete floors and participated in creating ST-115 standard.

35. The GMI website contains an advertisement that its CRMX Products are "officially certified in accordance with ST-115 Standards." A copy of the website advertisement is attached as Exhibit 7.

36. The ST-115 Standard also references the T Meter, which is advertised on the GMI website. The website claims that "The T Meter measures Concrete Surface Profiles (CSP) 1 – 6 electronically and is the only device that can be used for measuring the Ra and the nine Surface Texture Grades specified in the ST-115."[1]

---

[1] http://gmiengineeredproducts.com/products/t-meter, last visited Dec. 28, 2015.

37. A post to GMI's website blog dated December 1, 2015 states that "We make it a point to comply with the ST-115 standard and our CRMX 3-step concrete polishing process does just that."[2]

38. Upon information and belief, the only basis for GMI's claims that the CRMX Products can produce a finish in compliance with the ST-115 standard is the Forged Report.

39. The Forged Report is not only entirely false, its contents reflect poorly on Crane Engineering and Mr. Bauer. The Report does not satisfy Minnesota certification requirements for a report prepared by a professional engineer. The content of the report does not meet commonly accepted engineering standards.

40. Attributing such a document to Crane Engineering causes individuals and potential customers who are knowledgeable about such processes to question the soundness of Crane Engineering's methods and the validity of its work product. As a result, the Forged Report damages Crane Engineering's reputation.

41. In December 2015, Crane Engineering was contacted by the Executive Director of the CSDA, Patrick O'Brien. Mr. O'Brien had learned of the Forged Report and called to express his concern regarding any negative impact to the CSDA's reputation that may be caused by the Forged Report. Mr. O'Brien assured Crane Engineering that the CSDA had no involvement with the creation of the Forged Report or its distribution.

---

[2] http://gmiengineeredproducts.com/blog/importance-updating-specifications-concrete-industry, last visited Dec. 30, 2015.

# CLAIMS FOR RELIEF

## COUNT I: TRADEMARK INFRINGEMENT
## (15 U.S.C. § 1125(A))

42. Plaintiff restates and realleges each and every allegation contained in Paragraphs 1 through 41 of this Complaint.

43. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), provides in relevant part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person,
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

44. The Crane Mark, as that term is defined above, is a valid and protectable trademark under common law, which Plaintiff owns the exclusive right to use and enforce.

45. Defendants, by and through their unauthorized use of the Crane Mark in the Forged Report, are likely to cause confusion or mistake or to deceive a substantial segment of their purchasing audience in violation of 15 U.S.C. § 1125(a).

46. Defendants' unauthorized use of the Crane Mark is causing Plaintiff monetary damage and irreparable harm and is resulting in Defendants' enrichment.

47. Defendants have ignored Plaintiff's demand that they stop using the Forged Report, which contains the Crane Mark. If the aforesaid acts are permitted to continue, Plaintiff will sustain further loss, damage and irreparable injury, for which Plaintiff has no adequate remedy at law.

### COUNT II: COMMON LAW TRADEMARK INFRINGEMENT
### (MINNESOTA LAW)

48. Plaintiff restates and realleges each and every allegation contained in Paragraphs 1 through 47 of this Complaint.

49. As a result of Defendants' conduct, Defendants have unlawfully infringed the Crane Mark in violation of the common law of Minnesota.

50. If the aforesaid acts are permitted to continue, Plaintiff will sustain further loss, damage and irreparable injury, for which Plaintiff has no adequate remedy at law.

51. Plaintiff has suffered damages in an amount in excess of $75,000, the exact amount to be proven at trial.

### COUNT III: FALSE ADVERTISING UNDER THE LANHAM ACT
### (15 U.S.C. § 1125(A))

52. Plaintiff restates and realleges each and every allegation contained in Paragraphs 1 through 51 of this Complaint.

53. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits any person, in connection with any goods or services, from using in commerce any false designation of origin, false or misleading description of fact, or false or misleading

representation of fact, which "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."

54. Defendants, by and through their unauthorized use of Crane Engineering's Mark in the Forged Report, are likely to cause confusion or mistake or to deceive a substantial segment of their purchasing audience in violation of 15 U.S.C. § 1125(a).

55. Defendants, by and through their false and misleading representations of fact in the Forged Report, have misrepresented the nature, characteristics or qualities of the CRMX Products in violation of 15 U.S.C. § 1125(a).

56. The false and misleading representations of fact made by Defendants were literally false. Alternatively, they deceived or misled, or had a tendency to deceive or mislead, a substantial and appreciable segment of Defendants' purchasing audience.

57. Defendants willfully engaged in said deceptive practices in the course of their business, for their own commercial advantage.

58. Defendants' unauthorized use of the Crane Engineering Mark and false representations have caused Plaintiff irreparable harm and monetary damage in an amount to be determined at trial.

59. Defendants have ignored Plaintiff's demand that they stop using and disseminating the Forged Report. If the aforesaid acts are permitted to continue, Plaintiff will sustain further loss, damage and irreparable injury, for which Plaintiff has no adequate remedy at law.

# COUNT IV: DECEPTIVE TRADE PRACTICES
# (MINN. STAT. § 325D.44)

60. Plaintiff restates and realleges each and every allegation contained in Paragraphs 1 through 59 of this Complaint.

61. Minnesota Statute § 325D.44, subd. 1, reads in part:

A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:

. . . .

(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

. . . .

(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

. . . .

(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

. . . .

(8) disparages the goods, services, or business of another by false or misleading representation of fact;
. . . .

(13) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

62. Defendants' foregoing conduct with respect to the Forged Report constitutes deceptive trade practices in violation of Minnesota Statute § 325D.44.

63. Defendants willfully engaged in said deceptive practices in the course of their business, for their own commercial advantage.

64. Defendants' deceptive practices have caused Plaintiff irreparable harm and monetary damage in an amount to be determined at trial.

65. Defendants have ignored Plaintiff's demand that they stop using and disseminating the Forged Report. If the aforesaid acts are permitted to continue, Plaintiff will sustain further loss, damage and irreparable injury, for which Plaintiff has no adequate remedy at law.

66. Minn. Stat. § 325D.45 provides a private right of action to enforce the provisions of Minn. Stat. § 325D.44.

67. As a result of Defendants' conduct, Plaintiff is entitled to a temporary and permanent injunction and attorneys' fees and costs under Minn. Stat. § 325D.45.

### COUNT V: UNLAWFUL TRADE PRACTICES
### (MINN. STAT. §§ 325D.13 AND 8.31, SUBD. 3A)

68. Plaintiff restates and realleges each and every allegation contained in Paragraphs 1 through 67 of this Complaint.

69. Defendants' foregoing conduct with respect to the forgery and publication of the Forged Report constitutes unlawful trade practices in violation of Minnesota Statute § 325D.13.

70. Through Defendants' deceptive practices in connection with the sale of their merchandise, Defendants knowingly misrepresented, directly or indirectly, the true quality, ingredients or origin of their merchandise.

71. Defendants' unlawful trade practices are causing Plaintiff monetary damage and irreparable harm and is resulting in Defendants' enrichment.

72. If the aforesaid acts are permitted to continue, Plaintiff will sustain further loss, damage and irreparable injury, for which Plaintiff has no adequate remedy at law.

73. Minn. Stat. § 8.31, subd. 3a provides a private right of action to enforce the provisions of Minn. Stat. § 325D.13.

74. By distributing the Forged Report to market and promote the CRMX Products, Defendants are misrepresenting the true quality of the CRMX Products to the purchasing public. Prohibiting Defendants from distributing their false report in connection with the sales of GMI's products provides a public benefit by preventing further consumer confusion and deception, and allows Plaintiff to bring a civil action under Minnesota's private attorney general statute, Minn. Stat. § 8.31, subd. 3a.

## COUNT VII: FRAUDULENT MISREPRESENTATION

75. Plaintiff restates and realleges each and every allegation contained in Paragraphs 1 through 74 of this Complaint.

76. On or about the first week of February 2014, Mr. Bowman contacted Crane Engineering. Mr. Bowman spoke with Crane Engineering's employees, Mr. Bauer and Mr. Brand, and represented to them that he wanted a proposal for testing the CRMX Products. This representation was false. Mr. Bowman contacted Crane Engineering in order to obtain information he could use to forge a report under Crane Engineering's name. Mr. Bowman repeated the false pretenses for contacting Crane Engineering via emails to Mr. Bauer and Mr. Brand on February 7 and 8, 2014.

77. Mr. Bowman knew the representation that he was contacting Crane Engineering for potential testing of CRMX Products was false, or he made the representation without knowing whether it was true or false.

78. Mr. Bowman intended to induce Crane Engineering to act in reliance on his misrepresentation, and Crane Engineering reasonably did so by providing Mr. Bowman with a proposed scope of work and information that Mr. Bowman subsequently used to create the Forged Report.

79. Plaintiff has suffered damages in an amount in excess of $75,000, the exact amount to be proven at trial.

**COUNT VIII: DEFAMATION**

80. Plaintiff restates and realleges each and every allegation contained in Paragraphs 1 through 79 of this Complaint.

81. Defendants defamed Plaintiff by willfully creating and publishing the Forged Report that is falsely attributed to Plaintiff.

82. Defendants communicated and caused to be communicated the Forged Report to numerous individuals in the construction industry.

83. Defendants' statements directly tend to affect Plaintiff's business by prejudicing Plaintiff in the conduct of its business and by deterring third persons from dealing with it.

84. Defendants' statements and conduct have caused a direct harm to Plaintiff's business and reputation.

85. Plaintiff has suffered damages in an amount in excess of $75,000, the exact amount to be proven at trial.

### COUNT IX: APPROPRIATION OF NAME

86. Plaintiff restates and realleges each and every allegation contained in Paragraphs 1 through 85 of this Complaint.

87. Defendants have appropriated the name of Crane Engineering's employee, Mr. Bauer, for their own use and benefit by affixing Mr. Bauer's signature to the Forged Report without the consent of Mr. Bauer or Crane Engineering and using the Report for their own commercial purposes.

88. Defendants took advantage of Mr. Bauer's name and reputation as a Crane Engineering employee to promote the CRMX Products.

89. Plaintiff has suffered damages in an amount in excess of $75,000, the exact amount to be proven at trial.

### **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment as follows:

A. For a preliminary and permanent injunction restraining Defendants, their agents, servants, employees, and attorneys and those in active concert or participation with them from possessing, distributing or otherwise publishing any copies of the Forged Report;

B. For a preliminary and permanent injunction restraining Defendants, their agents, servants, employees, and attorneys and those in active concert or participation with them from using any name or mark that consists in whole or in part of "Crane

Engineering" or any name, mark or slogan confusingly similar to that Mark, including any use of any of the Crane Mark as defined herein;

C. For an order from the Court requiring that Defendants and all those in privity with them to turn over to Plaintiff any materials in Defendants' possession bearing the Crane Mark, or an order that all such materials be destroyed, pursuant to 15 U.S.C. § 1118;

D. For judgment that Defendants' violations as described above were willful;

E. For an award of the damages sustained by Plaintiff in an amount in excess of $75,000, the exact amount to be proven at trial;

F. For an award of treble the amount of all damages sustained by Plaintiff as a result of Defendants' wrongful acts—including, but not limited to, an award of Defendants' profits and actual damages, pursuant to 15 U.S.C. § 1117;

G. For an accounting of Defendants' profits from their aforesaid wrongful acts, including, but limited to, a statement of all profits made as a result of Defendants' continued unauthorized use of the Crane Mark;

H. For awards of Plaintiff's reasonable attorneys' fees, costs and expenses incurred in this action and as a result of Defendant's wrongful conduct;

I. For an award of pre-judgment and post-judgment interest on all amounts Defendants are ordered by this Court to pay Plaintiff according to law;

J. For leave to amend the Complaint to seek punitive damages, as allowable under Minnesota law;

K. For leave to amend the Complaint to add additional Defendants, as just and proper; and

L. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury of all issues so triable.

**MASLON LLP**

Dated: January 4, 2016.  By: *s/Charles G. Frohman*
Jason A. Lien (#028936X)
Charles G. Frohman (#0386695)
3300 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-4140
Telephone: (612) 672-8200
Facsimile: (612) 672-8397
Email: jason.lien@maslon.com
charles.frohman@maslon.com

**ATTORNEYS FOR PLAINTIFF**